**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-1005**

───────────

JOSUE ARIEL FUENTES; CRISTIAN AYALA RIVAS,

Plaintiffs - Appellants,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Rossie D. Alston, Jr., District Judge.  (1:23−cv−00408−RDA−IDD)

───────────

Argued:  March 19, 2026                                   Decided:  July 24, 2026
                          Amended:  July 27, 2026

───────────

Before DIAZ, Chief Judge, and GREGORY and BENJAMIN, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Benjamin wrote the opinion, in which Chief Judge Diaz and Judge Gregory joined.

───────────

**ARGUED:**  Margot Pyne Kniffin, YACUB LAW OFFICES, LLC, Woodbridge, Virginia, for Appellants.  Elizabeth A. Spavins, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Ivan Yacub, Ajoo Kim, YACUB LAW OFFICES, LLC, Woodbridge, Virginia, for Appellants.  Yaakov M. Roth, Acting Assistant Attorney General, Katelyn Masetta Alvarez, Kevin Hirst, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for

Appellee.

---

DEANDREA GIST BENJAMIN, Circuit Judge:

Josue Ariel Fuentes and Cristian Ayala Rivas (collectively, "Plaintiffs") are naturalized United States citizens who received legal status through the Special Immigrant Juvenile ("SIJ") program. Plaintiffs' noncitizen mothers both attempted to gain lawful status through their children. However, the applications were denied, pursuant to an exclusion clause in the SIJ statute, 8 U.S.C. § 1101(a)(27)(J)(iii)(II), and United States Citizenship and Immigration Services' ("USCIS") implementing regulation that excludes the parents of SIJ recipients from receiving immigration benefits. *Id.* § 1101(a)(27)(J)(iii)(II). Plaintiffs appeal the denials, challenging USCIS' interpretation of the exclusion clause and the exclusion clause itself on equal protection grounds. We find that the plain text of the exclusion clause supports USCIS' regulation and that the exclusion clause survives rational basis review. Thus, we affirm the decision of the district court.

I.

A.

In 1990, Congress amended the special immigrant classification to include noncitizen juveniles who require the protection of the state courts due to parental abuse, neglect, or abandonment. 8 U.S.C. § 1101(a)(27)(J); *see also* Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978, 5005–06. To receive SIJ status under the Immigration and Nationality Act ("INA"), an applicant must be (1) physically present in the United States at the time of filing and adjudication of their petition, (2) unmarried at

2

the time of filing and adjudication, (3) under the age of 21 at the time of filing, (4) subject to juvenile court determinations issued in the United States that meet the specified requirements, (5) obtain United States Department of Homeland Security consent, and (6) obtain United States Department of Health and Human Services consent, if applicable. *See* U.S. Citizenship and Immigr. Servs., USCIS Policy Manual, vol. 6, pt. J, ch. 2 (2026). Applicants must also file an I-360 petition with United States Citizenship and Immigration Services ("USCIS"). *See id.* Individuals with SIJ status can thereafter petition USCIS to adjust their SIJ status to legal permanent resident ("LPR") status. 8 U.S.C. § 1255; USCIS, Policy Manual, vol. 7, pt. F, ch. 7, § 2. After five years, an LPR can apply for naturalization. 8 U.S.C. § 1427(a).

The SIJ statute has an explicit restriction: the parents of minors with SIJ status can't receive lawful status based on their relationship to the minor child. The exclusion clause provides that:

> No natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

8 U.S.C. § 1101(a)(27)(J)(iii)(II). The exclusion clause has remained unchanged in every amendment of the INA since the establishment of the SIJ program in 1990.[1]

---

[1] *See, e.g.*, Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 141, 105 Stat. 1733, 1744-45; Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2460-61; William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235, 122 Stat. 5044.

Separate from the exclusion clause, the SIJ classification provision was amended in 1997 and 2008. In 1997, Congress updated the provision's required findings for a juvenile to receive SIJ status to include a finding of parental "abuse, neglect or abandonment." Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998 § 113. In the most recent 2008 amendments, Congress, amongst other changes, allowed for SIJ status based on a finding that "reunification with *1 or both* of the immigrant's parents is not viable due to abuse, neglect or abandonment or similar basis under state law." 8 U.S.C. § 1101(a)(27)(J) (emphasis added); *see also* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 § 235. Through both the 1997 and 2008 amendments, the language of the exclusion clause was left unchanged and does not distinguish between a parent with findings of "abuse, neglect or abandonment" and a parent with no such findings.

And in 2022, USCIS reaffirmed the exclusion clause in § 1101(a)(27)(J)(iii)(II), as it published a final rule that mirrors the exclusion clause:

> **No parental immigration rights based on special immigrant juvenile classification.** The natural or prior adoptive parent(s) of a petitioner granted special immigrant juvenile classification will not be accorded any right, privilege, or status under the Act by virtue of their parentage. This prohibition applies to all of the petitioner's natural and prior adoptive parent(s).

8 C.F.R. § 204.11(i) (emphasis added); *see also* 87 Fed. Reg. 13066, 13093 (Mar. 8, 2022).

### B.

Josue Ariel Fuentes arrived in the United States at 13 years old from El Salvador, after he was abandoned by his father. His mother, Karla Yamileth Figueroa Guardado, was

granted custody by the Juvenile and Domestic Relations District Court in Loudoun County, Virginia. The Loudoun court found that reunification with one or both of Fuentes's parents was not possible because of abuse, neglect or abandonment within the meaning of the INA. He then successfully petitioned through the SIJ program for an immigrant visa and lawful permanent residency. Fuentes became a naturalized United States citizen in 2016. In November 2017, Fuentes' mother submitted a Form I-131 for legal status "as the parent of an active-duty member of the United States Armed Forces," based on Fuentes' military service.[2] Her application was denied by USCIS "because [her] son was granted a Green Card based on his SIJ classification and he later naturalized" and therefore "he may not apply for his natural or prior adoptive parents to get military parole-in-place" even for the "non-abusive, custodial parent." J.A. 39.[3]

Cristian Ayala Rivas arrived in the United States in 2010 from El Salvador. Rivas was abandoned by his father and targeted by local gangs. His paternal uncle was granted custody by the Circuit Court for Montgomery County, Maryland.[4] J.A. 201. The Montgomery court found that "reunification with one or both of Christian's [sic] parents is not viable due to abuse, abandonment or neglect" within the meaning of the INA. J.A. 201 (internal quotation marks omitted). Rivas also successfully petitioned for an immigrant

---

[2] Fuentes served as a United States Marine.

[3] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers for citations to the J.A. utilize the "[J.A. or JA] #" numbering at the bottom of the page on each document.

[4] Rivas' mother consented to the grant of custody to Rivas' uncle.

5

visa pursuant to the SIJ program and was granted lawful permanent residency. Rivas became a naturalized United States citizen in 2021. In December 2021, Rivas filed an I-130 petition for his mother, Teresa Rivas Vasquez. The petition was denied because individuals, like Rivas, "who obtained [lawful permanent resident] status as an SIJ are not eligible to later confer immigration benefits to their biological or adoptive parent(s), even if they are not the parent that abused, neglected or abandoned the child." J.A. 73.

Plaintiffs sued in federal district court asserting two challenges: (1) an Administrative Procedure Act ("APA") challenge to USCIS' interpretation of the exclusion clause such that it excludes any individual who was granted SIJ status from ever conferring immigration benefits on their natural or adoptive parents; and (2) a constitutional challenge asserting that the inability to confer immigration benefits onto parents of SIJ recipients violates the equal protection component of the Fifth Amendment's due process clause. The parties filed competing motions for summary judgment. The district court found in favor of USCIS. On the APA claim, the district court reasoned that USCIS' regulation comported with the plain language of 8 U.S.C. § 1101(a)(27)(J)(iii)(II). And on the equal protection claim, it reasoned that Plaintiffs had no constitutional injury because the statute impacted their parents and not Plaintiffs directly, and in the alternative, that the regulation survives rational basis review.

Before us, Plaintiffs raise the same challenges, arguing that the district court erred on both issues. We affirm the district court because the plain text of the statute supports USCIS' interpretation and Plaintiffs cannot overcome rational basis review to support an

6

equal protection challenge.  We have jurisdiction under 28 U.S.C. § 1291, and each challenge is addressed in turn.

II.

We review a district court's summary judgment decision de novo.  *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669 (4th Cir. 2019).  And as a general matter, an agency's interpretation of a statute is also reviewed de novo.  *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168, 179 (2025).

III.

We first address Plaintiffs' APA challenge.  Our analysis proceeds in two parts. First, we interpret the exclusion clause in 8 U.S.C. § 1101(a)(27)(J)(iii)(II) to determine whether Congress barred natural parents of SIJ recipients from later receiving immigration benefits based on parentage.  Second, we consider whether USCIS' implementing regulation, 8 C.F.R. § 204.11(i), faithfully carries out that statutory bar.

A.

"The starting point for any issue of statutory interpretation . . . is the language of the statute itself." *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007).  To determine a statute's plain meaning, we review the "text of the statute, read in 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019) (quoting *Robinson v. Shell Oil Co.*, 519 U.S.

7

337, 341 (1997)).  "If the plain language is unambiguous, we need look no further." *Hately v. Watts*, 917 F.3d 770, 784 (4th Cir. 2019).

It is a "cardinal principle" of statutory construction that courts "have a duty, where possible, 'to give effect' to all operative portions of the enacted language, including its 'every clause and word.'" *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 244 (4th Cir. 2009) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).  And "when possible, we construe statutes to avoid absurd results." *See Timms v. U.S. Att'y Gen.*, 93 F.4th 187, 191 (4th Cir. 2024).

The judiciary's role is not to rewrite the statute, but to interpret Congress' intent. *United States v. Jones,* 60 F.4th 230, 238 (4th Cir. 2023).  Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

B.

Beginning with "the language of the statute itself," *Bly*, 510 F.3d at 460, the exclusion clause provides that "no natural parent . . . of any *alien* provided special immigrant status under this subparagraph *shall thereafter*, by virtue of such parentage, be accorded any, right, privilege, or status under this chapter."  8 U.S.C. § 1101(a)(27)(J)(iii)(II) (emphasis added).  The dispositive question is how the term "alien" should be construed.  To properly construe the term, we must "consider all the words employed," rather than "review[ing] isolated phrases." *United States v. Ide*, 624

8

F.3d 666, 668 (4th Cir. 2010). And the last-antecedent rule of statutory construction "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Bank of Am. Corp. v. United States*, 148 F.4th 171, 176 (4th Cir. 2025) (ellipsis in original) (quoting *Lockhart v. United States*, 577 U.S. 347, 351 (2016)). "This canon captures the simple intuition that Congress more likely intends a phrase to modify an adjacent noun or phrase than one far away." *Id.* Applied here, it means that we should understand the entire limiting clause "of any alien provided special immigrant status under this subparagraph shall thereafter" to modify "no natural parent," and the nested limiting clause "provided special immigrant status" to modify "alien." *See* 8 U.S.C. § 1101(a)(27)(J)(iii)(II).

So, reading the statute in its specific context, *Taylor*, 930 F.3d at 616, the plain text of the statute supplies the following: no natural parent of an alien who received SIJ status can ever receive immigration benefits based on the parent-child relationship. Thus, the district court properly concluded that the statute applies "to the natural parent of any person who is an alien *at the time that they receive special immigrant status* and deprives them of the opportunity to obtain benefits by virtue of the minor alien receiving the special status for any time *thereafter*." J.A. 205 (emphasis in original).

This plain reading is also supported by the general principles against superfluities and absurdities. Plaintiffs' interpretation would render the phrase in the statute "shall thereafter" superfluous. Taken together, *shall thereafter* is understood to be a permanent bar on the connected action. *See Shall*, *Black's Law Dictionary* (12th ed. 2024) (explaining "shall" has a "mandatory sense that drafters typically intend and that courts typically

9

uphold"); *Thereafter, Black's Law Dictionary* (12th ed. 2024) (explaining "thereafter" means "afterward" or "later"). To give "effect to all operative portions of the enacted language, including its every clause and word," *Shipbuilders Council of Am.,* 578 F.3d at 244–45, we must apply a mandatory and permanent bar on parentage-based rights for the parents of SIJ recipients.

Plaintiffs ask us to read the term "alien" in isolation so that the statute only applies to noncitizens at the time of application. But Plaintiffs' view would make the exclusion clause applicable in only the narrowest circumstance. Typically, only United States citizens who are 21 years or older may petition for immigrant visas on behalf of their parents. *See* 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.2(f). And LPRs can generally only sponsor their spouse or unmarried children, with limited exceptions. Take military parole-in-place, for example. Under military parole-in-place, active-duty members of the United States armed forces or reserves and honorably discharged veterans of the armed services or reserves can apply for a visa for a qualifying relative, including parents. That is one limited avenue where a noncitizen may apply for benefits for a parent. Plaintiffs focus on this exception as proof that the statutory bar is not wholly superfluous under their interpretation.

But we understand that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Assn's., Inc.*, 531 U.S. 457, 468 (2001). The reverse is also true. It stretches reasonableness to suggest that Congress included "shall thereafter"—a permanent bar—to apply only to the limited circumstance of military parole-in-place. *See Navy Fed. Credit Union v. LTD*

10

*Financial Servs., LP*, 972 F.3d 344, 361 (4th Cir. 2020) ("The canon [against superfluities] . . . is strongest when an interpretation would render superfluous another part of the same statut[e]."). A reading of the statute that limits the exclusion clause to only noncitizens *at the time of applying* would render the exclusion clause superfluous.

Accordingly, the Government's reading comports best with the plain meaning of the text. The statute as a whole means that the exclusion clause applies to those who received SIJ status, past and present.

What's more, Plaintiffs' interpretation would allow a parent who has abused, neglected, or abandoned their children to receive parentage-based immigration benefits. Given the origins of the statute, this reading produces absurd results. *Lynch v. Jackson*, 853 F.3d 116, 122 (4th Cir. 2017) ("Readings of a statute that produce absurd results are to be avoided."). Congress created the SIJ classification with the express goal to protect children:

> The SIJ provisions of the INA were enacted in 1990 to protect abused, neglected, or abandoned children who, with their families, illegally entered the United States. Congress provided an alternative to deportation for these children. Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States.

*Yeboah v. U.S. Dep't of Just.*, 345 F.3d 216, 221 (3d Cir. 2003). The provisions of the SIJ classification must be read with that purpose in mind. *See United States v. Murphy,* 35 F.3d 143, 145 (4th Cir. 1994) ("[W]e should give effect to the legislative will as expressed in the language."). Yet, Plaintiffs conceded in their brief and during oral argument that their position would allow *any* parent of an SIJ recipient to receive immigration benefits,

11

including the parent or parents who abused, neglected or abandoned their children. *See* Appellants' Br. (ECF No. 12) at 35 n.5[5] (hereinafter, "Opening Br.") ("Per this, abandoning parents would also not be excluded from the eligibility for benefits under the SIJS statute and the exclusion clause."). We interpret statutes to "avoid untenable distinctions and unreasonable results" yet the proposed outcome from Plaintiffs would yield such a result. *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982).

"Taking the plain meaning of these texts, and assuming that the words say what they mean and mean what they say," *Gilbert*, 678 F.3d at 277, we hold that the exclusion clause means that the parent of a child who received SIJ status cannot claim immigration benefits based only on the fact they are the SIJ recipient's parent.

C.

We next address whether USCIS' implementing regulation is "consistent with the statute." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) ("It is a basic tenet that 'regulations, in order to be valid, must be consistent with the statute under which they are promulgated.'" (quoting *United States v. Larionoff*, 431 U.S. 864, 873 (1977).)). We hold that it is.

The regulation provides that "[t]he natural . . . parent(s) of a *petitioner* granted special immigrant juvenile classification will not be accorded any right, privilege, or status under the Act by virtue of their parentage" which "applies to *all* of the petitioner's natural and prior adoptive parent(s)." 8 C.F.R. § 204.11(i) (emphasis added). Plaintiffs argue that

---

[5] Page numbers for citations to ECF documents utilize the page numbers in the red header on each document.

USCIS' regulation runs contrary to congressional intent: first, because the use of *petitioner* rather than *alien* broadens the scope of the statute beyond its intended purpose; and, second, because Congress intended to make a distinction between parents who abandon their children and parents who do not. *See* Opening Br. at 22–23. Yet, the plain statutory text undermines both arguments.

First, as we discussed above, the plain text of the statute creates a permanent bar on parentage-based immigration benefits for the parents of those who ever received SIJ status. As such, the distinction between *petitioner* in the regulation and *alien* in the statute is "a matter of semantics—not substance." *Wasman v. United States*, 468 U.S. 559, 573 (1984) (Powell, J., concurring). The "shall thereafter" language confirms that an "alien provided special immigrant status" under the statute is, in practical effect, the same as a "*petitioner* granted special immigrant juvenile classification" as used in the regulation. *See* 8 U.S.C. § 1101(a)(27)(J)(iii)(II); 8 C.F.R. § 204.11(i) (emphasis added).

Likewise, the plain text of the exclusion clause starts with "no natural parent." 8 U.S.C. § 1101(a)(27)(J)(iii)(II). It makes no distinction between any category of parent. This statutory language has remained unchanged since it was first included in the statute. As a result, the regulatory language saying the same is a valid interpretation of the statute.

Finally, nothing in the 2008 amendments changes this result. In 2008, Congress reauthorized the INA and amended the SIJ section to allow children to receive SIJ status based on the finding that at least one parent, rather than both parents, were abusive, neglectful or abandoning. *See* § 1101(a)(27)(J). Previously, the finding had to be made as to both parents. Plaintiffs argue that this created a statutory difference based on whether

13

the parent abandoned their child. But there is no support for such a distinction. The change to the visa requirements cannot be read to expand the category of people eligible for immigration benefits without a clear statement of congressional intent. In *Perez v. Cuccinelli*, the court considered whether Congress intended to require a finding of permanent nonviability for reunification under the SIJ statute. 949 F.3d 865, 874 (4th Cir. 2020). In holding that Congress did not, the court stated that "if Congress had intended such a requirement, it easily could have said so" as Congress rarely merely implies such decisions. *Id*. The same is true here. If Congress intended to make a distinction based on whether a parent abandoned their child, it would have said so. "Courts are not free to read into the language what is not there" and should "apply the statute as written." *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994)*; see also Am. Tobacco Co.*, 456 U.S. at 71 n.6 ("Had Congress intended so fundamental a distinction, it would have expressed that intent clearly in the statutory language or the legislative history."). So, the regulation's prohibition on all parents is the correct interpretation of legislative intent.

In sum, we hold that USCIS' implementing regulation is consistent with the exclusion clause at 8 U.S.C. § 1101(a)(27)(J)(iii)(II).

IV.

Plaintiffs also bring an equal protection claim under the Fifth Amendment. *See Strickland v. United States*, 32 F.4th 311, 356 (4th Cir. 2022) (noting that the "Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws"). "To succeed on an equal protection claim, a plaintiff must first demonstrate

14

that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id*. Where the classification involves unadmitted noncitizens, it is subject to rational basis review. *See Midi v. Holder*, 566 F.3d 132, 137 (4th Cir. 2009) ("Although courts usually subject national-origin classifications to strict scrutiny, when such classifications involve unadmitted aliens in the immigration context, we subject them only to rational basis review.").

We address each prong in turn. First, we conclude that Plaintiffs have shown differential treatment for purposes of equal protection. Second, we conclude that the distinction survives rational basis.

## A.

The first inquiry is whether Plaintiffs were "treated differently from others with whom [they were] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison*, 239 F.3d at 654. The district court found that Plaintiffs were not treated differently because USCIS' decision denying relief impacted the Plaintiffs' parents and not Plaintiffs themselves. However, we disagree.

A benefit of citizenship is the ability to bring your loved ones, including your parents, to your new home through the legal avenues provided by the government. *See Fiallo v. Bell*, 430 U.S. 787, 806–07 (1977) (Marshall, J., dissenting) (noting that in a separate provision of the INA "Congress extended to American citizens the right to choose

15

to be reunited in the United States with their immediate families" and as such "[t]he focus was on citizens" and "[t]he right to seek such relief was given only to the citizen, not the alien"). For Plaintiffs, these efforts are automatically futile as a matter of law because of the type of visa they received. Unlike naturalized citizens who are entitled to the full set of rights of any citizen, SIJ recipients don't get the same benefit. And this unequal treatment is "intentional or purposeful" because Congress drew the classification on the face of the statute: citizens whose status traces back to SIJ classification are treated differently from other citizens when they seek to petition for a parent. *See Fiallo*, 430 U.S. at 806–07 (Marshall, J, dissenting) (identifying equal protection concerns where "Congress did choose to extend such privileges to American citizens but then denied them to a small class of citizens").

## B.

Thus, we must "proceed[] to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654. Neither party disputes that rational basis review applies. *See Midi*, 566 F.3d at 137.

Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This review is highly deferential and "not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319–20 (1993). So, the court must uphold a statutory classification against an equal-protection challenge "'if there is any reasonably conceivable state of facts that could provide a rational basis for the

16

classification.'" *Orquera v. Ashcroft*, 357 F.3d 413, 425 (4th Cir. 2003) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  The evidentiary burden is on the plaintiff, not the Government.  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 at 314–15.  Plaintiffs "bear[] the heavy burden of negating every conceivable basis which might reasonably support the challenged classification." *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).  Congress "need not 'actually articulate at any time the purpose or rationale that supporting its classification.'" *Heller*, 509 U.S. at 320 (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 15 (1992)); *see also Beach Commc'ns, Inc.*, 508 U.S. at 315 ("[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").  A legislative choice "may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315.  The court has acknowledged that there is "no subject over which Congress has more power than the admission of [noncitizens]." *Santos v. Holder*, 532 F. App'x 404, 405 (4th Cir. 2013) (citing *Fiallo*, 430 U.S. at 792).

Congress created the SIJ classification to protect abused, neglected, or abandoned children.  *See Yeboah*, 345 F.3d at 221.  Thus, the exclusion clause serves the legitimate purpose of preventing those children from current or future harm by preventing the parent who may have abused, neglected, or abandoned the child from obtaining immigration benefits via this parentage.  Congress' purview is at its strongest in the immigration context, *see Johnson v. Whitehead*, 647 F.3d 120, 126–27 (4th Cir. 2011), and Plaintiffs failed to negate "'every conceivable basis'" for this clause.  *United States v. Timms*, 664

17

F.3d 436, 447 (4th Cir. 2012) (quoting *Heller*, 509 U.S. at 320); *see also Talley v. Folwell*, 133 F.4th 289, 304 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 609 (2025) (finding no error in a district court's rational basis analysis "in light of the high bar set by the many opinions applying rational-basis review").

Accordingly, Plaintiffs fail to meet their burden to show that the Government has no rational basis for such a distinction.

V.

For the above reasons, the decision of the district court is

*AFFIRMED.*